UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re JASON WYLIE GILBERT,<br><br>    Debtor-Appellant. | Case No. 15-13261<br><br>Honorable Laurie J. Michelson |

**OPINION AND ORDER AFFIRMING DISMISSAL OF BANKRUPTCY PETITION**

In 2009, Jason Wylie Gilbert filed for bankruptcy three times and, in each case, sought waiver of the $299 filing fee. The bankruptcy court dismissed the first two petitions because Gilbert, who was proceeding *pro se*, had not filed required paperwork. Following both dismissals, the bankruptcy court denied Gilbert's request for a filing-fee waiver. In the third case, the bankruptcy court found that Gilbert was entitled to a fee waiver, but then conditioned the maintenance of the action on Gilbert paying the unpaid $598 filing fees for the prior two cases. Gilbert did not pay the $598 in the time allotted, so the bankruptcy court dismissed his case. Gilbert did not appeal the dismissal.

Years later, in 2015, Gilbert again filed for bankruptcy and, this time, was represented by counsel and paid the filing fee. But the bankruptcy court still conditioned maintenance of the action on Gilbert's payment of $598 in fees associated with the first two 2009 cases. Gilbert again did not pay the $598 in the time allotted, so the bankruptcy court dismissed his case.

Gilbert appeals. He argues that the bankruptcy court had no authority to condition the maintenance of his 2015 case on the payment of fees for filing two 2009 cases. Regardless of whether this Court agrees with the bankruptcy court's dismissal, it was an "appropriate" action as that term is used in 11 U.S.C. § 105(a). The Court thus affirms.

I.

A.

In March 2009, Gilbert filed for Chapter 7 bankruptcy and asked the bankruptcy court to waive the $299 filing fee (comprised of $245 base filing fee, a $39 administrative fee, and a $15 trustee surcharge) or, alternatively, to allow him to pay the fee in installments. But Gilbert, who was proceeding without counsel, did not file certain documents necessary to perfect the voluntary petition. (*See* Dkt. 3 at Pg ID 71.) The bankruptcy court thus dismissed Gilbert's case, and, a week later, denied Gilbert's request to waive the filing fee: "This case was dismissed on March 13, 2009 due to Debtor's failure to file a matrix, and Debtor has not filed the required Schedules. For these reasons, IT IS ORDERED that Debtor's [application for a fee waiver] is DENIED." (Dkt. 3 at Pg ID 73.)

A few months later, Gilbert filed another Chapter 7 petition and again sought a waiver of the filing fee (or to pay it in installments). (Dkt. 3 at Pg ID 33.) But Gilbert, still proceeding *pro se*, again failed to file the proper schedules. So the bankruptcy court (the same judge as before) dismissed the case. (Dkt. 3 at Pg ID 44.) And three days later, the bankruptcy court denied Gilbert's fee-waiver request: "This case was dismissed on June 15, 2009 due to Debtor's failure to file numerous required documents, including Schedules. IT IS ORDERED that Debtor's [application for a fee waiver] is DENIED." (Dkt. 3 at Pg ID 46.) The court also ordered Gilbert to pay the filing fee within seven days. (*Id.*)

In September 2009, Gilbert filed a third *pro se* Chapter 7 petition. (Dkt. 3 at Pg ID 18.) As on the prior two occasions, he sought a waiver of the filing fee. This time, however, the bankruptcy court (the same judge) granted it, finding that Gilbert had "income less than 150

percent of the income official poverty line" and that Gilbert was unable to pay the filing fee in installments. (*Id.* at Pg ID 24.)

Two weeks after granting Gilbert this fee waiver, the bankruptcy court issued an order stating that Gilbert "owe[d] a total of $598.00 in filing fees." (*Id.*) The order referred not to the filing fee for Gilbert's third petition, but the fees that Gilbert never paid when he filed the two prior petitions. (*See id.*) The bankruptcy court directed Gilbert to appear at a hearing and show cause why the case should not be dismissed for his failure to pay the fees associated with the first two 2009 petitions. (*Id.*) Following the November 4, 2009 hearing (the transcript of which is not available), the bankruptcy court "dissolv[ed]" the show cause order—on the condition that Gilbert pay the $598 in filing fees by January 11, 2010. (Dkt. 3 at Pg ID 27.) Gilbert did not pay, so his third Chapter 7 petition was dismissed. No appeal was taken.

**B.**

Almost six years later, in April 2015, Gilbert filed a fourth Chapter 7 petition. The case was assigned to the bankruptcy judge who dismissed the three 2009 cases. But, as relevant to this appeal, two things were different: Gilbert had retained counsel and had paid the filing fee. *See In re Gilbert*, No. 15-bk-45730 (Bankr. E.D. Mich. filed April 13, 2015).

Three days after Gilbert properly filed his petition, the bankruptcy court issued a show cause order: Gilbert was to appear at a hearing to explain why the case should not be dismissed because he still had not paid $598 for the first two 2009 petitions. (Dkt. 3 at Pg ID 14, 75–76.) At the hearing, counsel for Gilbert explained that Gilbert did not file the petitions properly in 2009 because he lacked counsel and that Gilbert was not in "a great position" to pay the fees for the 2009 cases. (Dkt. 3 at Pg ID 76.) Counsel requested that the bankruptcy court "use its discretion to waive any past filing fees or to grant [Gilbert] time to pay them." (*Id.* at 77.) The bankruptcy

3

court declined to waive the fees, explaining: "When a debtor does not file the required schedules, as happened in [the] two [2009] cases, and the case is dismissed, I always deny the filing fee waiver application because I don't have the ability to check those schedules . . . ." (*Id.* at Pg ID 78.) The bankruptcy court further explained that, given the six-year time lapse, there was no way to determine if Gilbert was eligible for fee waivers in 2009. (*Id.* at Pg ID 78–79.) Thus, the bankruptcy court conditioned the maintenance of Gilbert's case on his payment of $598 within four months. (*Id.* at Pg ID 81–82.)

About a week after the bankruptcy court's ruling, Gilbert appealed to this Court. This Court dismissed the appeal because no final order had been entered. *In re Gilbert*, No. 15-11738 (E.D. Mich. July 16, 2015) (order dismissing case).

The bankruptcy case proceeded (a meeting of creditors was held in June 2015), but not to completion. Because Gilbert did not pay the $598 by the four-month deadline, the bankruptcy court dismissed Gilbert's case and barred him from filing "any new case under the Bankruptcy Code" until he paid $598. *In re Gilbert*, Case No. 15-bk-45730 (Bankr. E.D. Mich. Sept. 14, 2015) (order dismissing case).

Gilbert immediately appealed to this Court.

## II.

The bankruptcy court referenced two legal bases for dismissing Gilbert's petition: 11 U.S.C. § 707(a)(2) and 11 U.S.C. § 105(a). *In re Gilbert*, No. 15-bk-45730 (Bank. E.D. Mich. Sept. 14, 2015) (order dismissing case); *see also In re Gilbert*, No. 15-bk-45730 (Bank. E.D. Mich. May 7, 2015) (supplement to May 6, 2015 bench ruling). Gilbert claims that neither statutory provision permits a bankruptcy court to dismiss a debtor's bankruptcy petition for a debtor's failure to pay fees for filing earlier petitions. (*See generally* Dkt. 4, Appellant's Br.)

Regarding § 707(a), which allows bankruptcy courts to dismiss a case for failure to pay "any fees or charges required under chapter 123 of title 28" (chapter 123 in turn includes the filing fee to commence a Chapter 7 case), the bankruptcy courts are split on whether it applies only to fees for the current filed case or also applies to fees for prior cases. In *In re Machdanz*, No. 93-03480, 1994 WL 740457, at *2 (Bankr. D. Idaho Dec. 16, 1994), the court noted, "[I]f 11 U.S.C. 1307(c)(2) were not limited to fees incurred in connection with the case to be dismissed, a debtor could be denied access to relief under title 11 because the debtor had outstanding fees owing to virtually any federal court. Section 1307(c)(2) was not intended to have such a broad sweeping result." *See also In re Howard*, 333 B.R. 826, 828 (Bankr. W.D. Wis. 2005) ("The logic of *Machdanz* is compelling."). In contrast, in *In re Domenico*, 364 B.R. 418, 419 (Bankr. D.N.M. 2007), the court observed the following: "Certainly nothing in the statute explicitly limits the term 'any fee' to the current case. Had Congress meant to limit the language to fees required for the current case, it could easily have used qualifying language such as 'nonpayment of any fees or charges *arising in the case* required under chapter 123 . . . .'"

The Court declines to weigh in on this split in authority because it finds that § 105(a), the other provision on which the bankruptcy court relied, permitted the bankruptcy court to condition the maintenance of Gilbert's bankruptcy action on the payment of fees for filing two prior bankruptcy petitions.

Section 105(a) reads:

> The court may issue any order, process, or judgment that is necessary or *appropriate to carry out the provisions of this title*. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or *appropriate to enforce or implement court orders or rules*, or to prevent an abuse of process.

11 U.S.C. § 105(a) (emphases added).

5

Regarding the "carry out" language, "[i]t is hornbook law that § 105(a) does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code. Section 105(a) confers authority to 'carry out' the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits." *Law v. Siegel*, — U.S. —, 134 S. Ct. 1188, 1194–95 (2014) (internal quotation marks and citation omitted). The Court is not aware of any Code provision that expressly prohibits a bankruptcy judge from mandating the payment of prior filing fees in order to pursue another bankruptcy petition. *Cf.* 11 U.S.C. § 109(g) (barring an individual from seeking discharge where the individual had a petition dismissed in the preceding 180 days for "willful failure" to abide by a court order); 11 U.S.C. § 707(a) (permitting the bankruptcy court to dismiss a case for "nonpayment of any fees or charges," including the fee for commencing a chapter 7 case).

Gilbert says that the bankruptcy court's condition runs contrary to 11 U.S.C. § 362(a)(1), a provision that automatically stays certain proceedings upon the filing of a petition. Gilbert's position is that the bankruptcy court is a creditor attempting to collect a debt (the unpaid filing fees) and so its demand that Gilbert pay $598 violates § 362(a)(1). But, as its language indicates, § 362(a)(1) pertains only to "proceeding[s] against the debtor." *See also In re White*, 186 B.R. 700, 704 (B.A.P. 9th Cir. 1995); *Koolik v. Markowitz*, 40 F.3d 567, 568 (2d Cir. 1994). Because Gilbert—not the clerk of the bankruptcy court—initiated this case, it is not a proceeding "against" Gilbert, and § 362(a)(1) is not contrary to the bankruptcy court's condition.

To the extent that Gilbert intended to rely on a related stay provision, § 362(a)(6), that too is not contrary to the bankruptcy court's dismissal of Gilbert's case for failure to pay the fees for filing prior cases. Section 362(a)(6) provides that the filing of a petition "operates as a stay, applicable to all entities, of . . . any act to collect, assess, or recover a claim against the debtor

that arose before the commencement of the case under this title." Arguably, the bankruptcy court falls under the "all entities" language, and arguably, its demand that Gilbert pay $598 for previously filed petitions is "an[] act to collect, assess, or recover a claim against the debtor." ("Claim" is defined broadly in the Code as a "right to payment." *See* 11 U.S.C. § 101(5).

That § 362(a)(6) might be strained to capture the bankruptcy court's action does not persuade the Court that the bankruptcy court could not act under § 105(a). The purpose of § 362(a)(6) is to protect debtors from harassment by creditors:

> "Creditors in consumer cases occasionally telephone debtors to encourage repayment in spite of bankruptcy. Inexperienced, frightened, or ill-counseled debtors may succumb to suggestions to repay notwithstanding their bankruptcy. [Paragraph (a)(6)] prevents evasion of the purpose of the bankruptcy laws by sophisticated creditors."

*In re Mateer*, 205 B.R. 915, 921 (C.D. Ill. 1997) (quoting H. Rep. No. 95–595 at 342 (1977)); (citing S. Rep. No. 95–989 at 49–51 (1978))). Thus, a bankruptcy judge enforcing a bankruptcy filing fee requirement created by Congress does not implicate § 362(a). *See In re Teerlink Ranch Ltd.*, 886 F.2d 1233, 1237 (9th Cir. 1989) ("The stay [under § 362] does not operate against the court with jurisdiction over the bankrupt."); *cf. In re Deerman*, 482 B.R. 344, 354 (Bankr. D.N.M. 2012) ("[T]he automatic stay does not apply to acts taken in a debtor's bankruptcy case brought before the Bankruptcy Court seeking relief under the Bankruptcy Code.").

This leaves two other limitations on the scope of § 105(a) stemming from its text—that the action or order in question be "appropriate" to carry out "the provisions" of the Bankruptcy Code (or, similarly, "appropriate" to enforce "court orders or rules"). In other words, was it "appropriate" for the bankruptcy court to enforce the filing-fee provisions of the Code, *see* 11 U.S.C. § 707(a); 28 U.S.C. § 1930(a), (f), by barring a debtor from proceeding with his petition until he pays all fees for filing prior cases?

Congress has seen fit to require debtors who are financially able to offset some of the costs associated with maintaining the bankruptcy system specifically, or, at least, the federal courts generally:

> The statutory fees which are collected at the time of filing are necessary for the administration of the bankruptcy courts and the cases pending within the bankruptcy court system. The collected fees are divided among the U.S. Trustee System Fund, the Judiciary, the private trustee assigned to the Chapter 7 case, and the general fund of the U.S. Treasury. Because of the heavy reliance on filing fees to self-fund the bankruptcy system, thereby alleviating or greatly reducing the need for taxpayer funding, strong public policy considerations weigh in favor of requiring that debtors pay filing fees in all instances except when they clearly meet the statutory criteria for a waiver.

*In re Henretty*, 456 B.R. 224, 227 (Bankr. W.D. Pa. 2011); *accord In re Bussey*, No. 14-32160, 2014 WL 2765703, at *1 (Bankr. N.D. Ohio June 18, 2014). Given that the bankruptcy system is predicated (at least in part) on filing fees, it would substantially strain the system if debtors were permitted to file several petitions without paying the filing fee. *See In re Gjerde*, 535 B.R. 329, 332 (Bankr. E.D. Cal. 2015) (noting that a fee waiver "deprives the chapter 7 trustees of the $60 from the filing fee that often is their sole source of compensation in a no-asset case, in effect conscripting them to work for free" and also "deprives the courts of fee revenue that Congress counts on to assist in funding the Judicial Branch"). And, notably, a debtor does not cure his past filing-fee deficiencies by paying for his next petition. As such, in limited circumstances, the Court finds that it is "appropriate to carry out the provisions" of the Bankruptcy Code or "appropriate to enforce or implement court orders or rules," 11 U.S.C. § 105(a), for a bankruptcy court to require a debtor who has used the bankruptcy system to pay for that use before using the system again.

Here, Gilbert was able to pay the $335 filing fee, and the bankruptcy court thus could have reasonably thought that he could pay outstanding filing fees of $598. Indeed, Gilbert's

8

counsel suggested to the bankruptcy court that Gilbert might be able to pay the $598 in four months: "we are trying to recover garnished funds for the debtor, which, if recovered, would be able to pay these filing fees fairly quickly. And if we can't recover those within three or four months, that would give him time to set the money aside to pay the filing fees." (Dkt. 3 at Pg ID 80.) Moreover, when the bankruptcy court first imposed the condition on filing and dismissed the third 2009 case, Gilbert had the opportunity to then appeal but did not.[1] Finally, while Gilbert states that he was eligible for a fee waiver for the first two 2009 cases, he has not proven this claim. (*See* Appellant's Br. at 6, 12.) (Had Gilbert done so, the bankruptcy court would have likely reached a different conclusion.) Given all of this, the Court finds that the bankruptcy court acted within the broad scope of § 105(a) when it conditioned the maintenance of Gilbert's 2015 petition on the payment of $598 in fees for filing two petitions in 2009. *See In re Mitan*, 573 F.3d 237, 244–45 (6th Cir. 2009) (referencing Congress' "broad grant of equitable power" to the bankruptcy courts under § 105(a)); *Matter of Volpert*, 110 F.3d 494, 500 (7th Cir. 1997) ("Section 105 grants broad powers to bankruptcy courts to implement the provisions of Title 11 and to prevent an abuse of the bankruptcy process.").

None of Gilbert's arguments warrant a different result. He argues that the bankruptcy court exceeded its authority in imposing the condition. (Appellant's Br. at 7–8.) The foregoing analysis of § 105(a) disposes of this argument. He also argues that the bankruptcy court waived the right to impose the condition (or is estopped from doing so) because it did not impose the condition after his first case was dismissed without payment of the filing fee. (Appellant's Br. at 8–10.) But Gilbert cites no law stating that a court—as opposed to a litigant—waives a rule (or is

---

[1] That appeal likely would have been stronger for Gilbert than this one. There, the bankruptcy court conditioned the continuance of Gilbert's case on the payment of $598 in filing fees (in one lump sum) within days after finding that Gilbert could not afford to pay half that amount (even in installments).

estopped from applying one) if it does not apply it in the first instance. And the Court thinks that § 105(a) grants the bankruptcy court some discretion in deciding when to condition the maintenance of a petition on the payment of outstanding filing fees. Finally, Gilbert says that "when the [bankruptcy court] itself becomes an agent of a creditor, this creates an inherent conflict that cannot be resolved by a simple application of 11 U.S.C. § 105(a)." (Appellant's Br. at 11.) This argument proves too much: it would mean that the bankruptcy court would be operating under a conflict of interest any time that a debtor owes money to the federal courts, or, at least, to the bankruptcy courts.

### III.

In sum, in enacting 11 U.S.C. § 105(a), Congress granted bankruptcy courts broad authority to implement the provisions of the Bankruptcy Code. While no doubt difficult for someone in Gilbert's position, the bankruptcy court's requirement that Gilbert pay $598 in fees for filing two earlier cases to maintain this case did not exceed the scope of § 105(a). The bankruptcy court's dismissal is thus AFFIRMED. Gilbert's motion to stay this case (Dkt. 6) is DENIED as moot.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated: February 17, 2016

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 17, 2016.

s/Jane Johnson
Case Manager to
Honorable Laurie J. Michelson